**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

EDDIE RISDAL,

        Plaintiff,

vs.

JASON SMITH, et al.,

        Defendants.

No. C18-4057-LTS

**MEMORANDUM OPINION AND
ORDER ON MOTION FOR
SUMMARY JUDGMENT**

## I.     INTRODUCTION

This case is before me on defendants' motion for summary judgment (Doc. No. 40).  Plaintiff Eddie Risdal filed a resistance (Doc. No. 44).[1]  Also before me are Risdal's motion for an injunction (Doc. No. 51), motion for sanctions (Doc. No. 55) and motion for summary judgment (Doc. No. 57).  Defendants filed a resistance to both Risdal's motion for an injunction (Doc. No. 53) and motion for sanctions (Doc. No. 56).  Finally, defendants filed a motion to strike Risdal's motion for summary judgment (Doc. No. 60).  Oral argument is not necessary as to any of the pending motions.  L.R. 7(c).

## II.     PROCEDURAL HISTORY

On July 5, 2018, Risdal filed a motion to proceed in forma pauperis (Doc. No. 1) and pro se complaint (Doc. No. 1-1).  I conducted a review of Risdal's filings (Doc. No. 2) and, because they were mostly illegible, gave him 28 days to file amended pleadings.

---

[1] Risdal is a patient confined to the Civil Commitment Unit for Sexual Offenders (CCUSO) located in Cherokee, Iowa.  CCUSO is not a prison facility.  Instead, it "provides a secure, long-term, and highly-structured setting to treat sexually violent predators who have served their prison terms, but who, in a separate civil trial, have been found likely to commit further violent sexual offenses."  *Civil Commitment Unit for Sexual Offenders*, Iowa Department of Human Resources, http://dhs.iowa.gov/mhds/mental/in-patient/ccuso (March 30, 2020).

Risdal filed an amended complaint (Doc. No. 3) and the motion to appoint counsel (Doc. No. 4) on July 30, 2018. On August 10, 2018, I denied Risdal's motion to proceed in forma pauperis, noting that he had a large balance in his institution trust account. Doc. No. 5. In that order, I also directed him to file a second amended complaint and withheld ruling on his motion to appoint counsel.

Risdal filed a second amended complaint (Doc. No. 8) on August 24, 2018. On August 24, 2018, the Clerk of Court's Office received Risdal's $400 filing fee.[2] In his second amended complaint, Risdal asserts that the defendants: 1) improperly deprived him of personal property; 2) interfered with his access to the court by taking his legal papers; and 3) improperly forced him to take medication. *See* Doc. No. 8.

On December 13, 2018, I entered an order (Doc. No. 11) directing the Clerk of Court to serve Risdal's pro se complaint on the defendants. Risdal filed a motion (Doc. No. 10) for injunctive relief on November 29, 2018. Defendants filed a motion to dismiss defendant "CCUSO treatment team" (Doc. No. 18) on January 6, 2019. Defendants filed an answer (Doc. No. 20) to the amended complaint on January 9, 2019.[3] On February 13, 2019, I entered an order denying plaintiff's motion for an injunction and noted that he had an extremely narrow path to maintain his claims. Doc. No. 28. In that same order I dismissed defendant "CCUSO Treatment Team" and denied Risdal's motion to appoint counsel. *Id*.

On February 21, 2019, plaintiff filed an amended complaint naming the individual members of the "CCUSO Treatment Team." Doc. No. 29. On July 8, 2019, defendants filed an amended answer. Doc. No. 39. On July 18, 2019, defendants filed the present

---

[2] Because Risdal paid the filing fee, I did not conduct an initial review pursuant to either 28 U.S.C. § 1915(e)(2) or § 1915A.

[3] Risdal filed a response (Doc. No. 22) to the answer, along with two exhibits (Doc. No. 22-1, 22-2), on January 14, 2019. Those responses were not permitted under the Federal Rules of Civil Procedure.

motion for summary judgment.  Doc. No. 40.  On July 25, 2019, Risdal filed a supplement to his complaint.  Doc. No. 42.  On that same date, defendants filed an amended answer responding to Risdal's supplement.  Doc. No. 43.  On July 26, 2019, Risdal filed a resistance to the motion for summary judgment.  Doc. No. 44.  On July 28, 2019, defendants filed a reply brief.  Doc. No. 46.  On August 7, 2019, Risdal filed a supplement to his resistance.  Doc. No. 48.  Risdal filed another supplement on September 12, 2019.  Doc. No. 50.

On November 12, 2019, Risdal filed a second motion for an injunction.  Doc. No. 51.  On November 14, 2019, defendants filed a resistance to that motion.  Doc. No. 53.  On December 5, 2019, Risdal filed a supplement to his motion for an injunction.  Doc. No. 54.  On January 6, 2020, Risdal filed a motion for sanctions.  Doc. No. 55.  On January 24, 2020, defendants filed a resistance to the motion for sanctions.  Doc. No. 56.

On March 2, 2020, Risdal filed a motion for summary judgment.  Doc. No. 57.  He subsequently filed two supplements to the motion.  Doc. Nos. 58, 59.  On March 22, 2020, defendants filed a motion to strike plaintiff's motion for summary judgment.  Doc. No. 60.  Plaintiff filed two more supplements on March 27, 2020.  Doc. Nos. 61, 62.

### III.    PRELIMINARY MATTERS

The first issue I will consider is Risdal's motion for an injunction (Doc. No. 51).  In that motion, plaintiff says he is being retaliated against as defendants have prohibited him from getting certain items of mail.  Plaintiff asks that the defendants be enjoined from prohibiting him from getting mail that defendants classify as counter-therapeutic.

As was noted above, Risdal previously filed a motion for an injunction, which I denied.  *See* Doc. No. 28.  In that order, I set out the standards related to injunctions.  Risdal's current injunction, while styled as regarding "retaliation," is a simple restatement of his primary arguments in this case.  As will be set out more below,

plaintiff's claims fail as a matter of law.  Accordingly, his motion for an injunction (Doc. No. 51) is **denied**.

Next, I consider Risdal's motion for sanctions (Doc. No. 55).  Risdal alleges defendants should be sanctioned because they prohibited him from sending a piece of mail.  However, once again, Risdal's motion is really about his underlying complaint that defendants determined "Mystery Boys, Inc." is counter-therapeutic.  Risdal does not allege that defendants failed to follow Fed. R. Civ. P. 11(b), nor does he cite any legal theory that would give me the power to sanction the defendants in this situation.  Additionally, as will be discussed more below, this court has previously found that defendants have institutional authority to inspect the mail.  As noted in the defendants' resistance:

> "CCUSO has an interest in the safety of patients and the public as well as an interest in maintaining a therapeutic treatment environment for patients. Safety and a therapeutic treatment environment are legitimate interests. *See Dawson v. Scurr*, 986 F.2d 257 260 (8th Cir. 1993)." *Williams v. Benson*, No. C15-4035-LTS, 2016 WL 3636035, at *9 (N.D. Iowa June 29, 2016).

> Mr. Risdal was a named plaintiff of the previously litigated class action (C05-4065 DEO) that resolved concerns about CCUSO's mail policy.  The Amended Settlement Agreement includes the following provision: "[if] mail is rejected in accordance with CCUSO's policy, the recipient and sender will receive notice of mail rejection.  Either the recipient or the sender may appeal the rejection by completing a grievance. . . ."  To the extent Mr. Risdal seeks to change CCUSO's mail policy, his acceptance of the settlement prohibits new litigation of the constitutionality of the mail policy. *Williams v. Benson*, No. C15-4035-LTS, 2016 WL 3636035, at *8 (N.D. Iowa June 29, 2016).

Doc. No. 56 at 2.  Accordingly, Risdal's motion for sanction (Doc. No. 55) is **denied**.

Finally, I will consider Risdal's motion for summary judgement (Doc. No. 57) and defendants' motion to strike the same (Doc. No. 60).  On May 28, 2019, the court entered a standard briefing schedule.  Doc. No. 35.  Relevant to the present discussion, that order stated, "[a]ll dispositive motions shall be filed within four (4) months from

[May 28, 2019]." Thus, motions for summary judgment were to be filed by September 28, 2019. Risdal did not file his motion for summary judgment until March 2, 2020 – more than five months after the deadline passed. Risdal has made no argument as to why he should be allowed to file his motion for summary judgment so late.

As argued by defendants:

> [u]nder Fed. R. Civ. P. 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." The district court has discretion to admit or exclude materials under this rule, and its "refusal to accept untimely filed materials will not be reversed for an abuse of discretion unless the proponent of the materials has made an affirmative showing of excusable neglect."

*Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010). Because Risdal has not shown good cause for his filing his motion for summary judgment late, defendants' motion to strike (Doc. No. 60) is **granted** and his motion (Doc. No. 57) for summary judgment is **stricken**.[4]

## IV. APPLICABLE STANDARDS

### A. Summary Judgment

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[4] Although not relevant to the issue of whether his motion was out of time, I note that Risdal's motion for summary judgment would also fail on its merits.

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### B.    Section 1983

Risdal brings his claims pursuant to 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Section 1983, however, provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a violation of [42 U.S.C.] 1983' –for [42 U.S.C.] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 serves as a vehicle for plaintiffs to vindicate rights that exist under other bodies of law such as the Constitution and statutes. 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271).

In assessing a complaint by a pro se plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to pro se complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (*quoting Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of pro se complaints, the pro se plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (*quoting Stone*, 364 F.3d at 914). Thus, pro se litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Id.* (*quoting Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

## V.  FINDINGS OF FACT

Along with their motion for summary judgment, defendants filed a statement of undisputed facts. (Doc. No. 41). Plaintiff did not file a resistance to those facts, nor did he file his own statement of facts. "[A] failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *See* LR 56(b); *see also* Fed. R. Civ. P. 56(e). Therefore, I treat as admitted the facts set forth in defendants' statement. Thus, the following facts are undisputed:

Risdal has a deeply held belief, which he often couches in religious terms, that legal prohibitions on sex and sexual relations between adults and children should be abolished. Risdal has a certificate of ordination from the Universal Life Church and he uses his divinity training to advocate for his beliefs. To support his view that it is natural for adults and children to have sexual relations, Risdal formed "Mystery Boys, Inc." When allowed to do so, Risdal uses his "Mystery Boys, Inc." as a platform to advocate his belief that it is natural, and biblical, for adults to have sexual relationships with

children. His advocacy includes sending both the court and lawmakers drawings he feels support his beliefs.

Risdal also has a history being violent and disruptive, including vandalizing facilities at CCUSO. Risdal underwent a psychiatric evaluation which indicated that he has Delusional Disorder, Paraphilia, Hebephilia, Personality Disorder with Antisocial and Narcissistic features, and possible Pedophilia, and that he suffers from extreme paranoia and persecution complex. After a hearing on May 21, 2009, an Iowa state district court judge found clear and convincing evidence that Risdal was seriously mentally impaired and ordered involuntary medication under Iowa Code § 229. *See In the Matter of Eddie Risdal*, 03181 MHMH 002317 (Cherokee County 2009). Risdal has had additional medical evaluations since 2009, which continue to show that he suffers from a variety of mental health issues. Additionally, the Iowa state court reevaluates Risdal's mental health situation annually and has continued to approve involuntary medication.

In 2008, Risdal was told he would be placed on the readable mail list at CCUSO. Relevant to Risdal's case, the readable mail list means that CCUSO officials have determined that Risdal is engaged with "counter-therapeutic" activity through the mail. As a person on the readable mail list, CCUSO officials screen Risdal's mail and, after notification, confiscate the counter-therapeutic material. In October 2016 and January 2019, Risdal was informed that his requests to be taken off the readable mail list were reviewed but the treatment team determined that he would remain on the list. Risdal agrees that he has regular review of the readable mail restriction, but he considers the readable mail restriction unconstitutional because, he believes, it is a violation of his First

Amendment right to receive pornography. Additionally, Risdal was told that he could not operate Mystery Boys, Inc. from CCUSO.[5]

Risdal complains about property he "lost" around 2007 to 2009. Some of the materials Risdal "lost" were confiscated under the readable mail policy. Risdal claims that his bank statements were destroyed over four months in 2008 because he never received them. Risdal discovered the missing statements in 2008. He also claims that sex magazines, DVDS, and other materials were destroyed in 2007 because they were contraband according to CCUSO policy. However, it is undisputed that CCUSO provides a notice to patients when materials are rejected in accordance with the mail policy. Additionally, some items Risdal believed were missing were recently returned to him. A TV cable and earphones were returned to him. The mini cassette recorder was located but CCUSO would not return the item to him.

In February 2018, Risdal sent a kite (an institution message at CCUSO) requesting access to his storage unit to retrieve legal materials. Risdal explained that he was looking for a case number. Specifically, he stated that, "I was looking for an Iowa Code number that extends the statute of limitations until the fraud, mistake, or trespass is discovered." At the time, Risdal was challenging his criminal conviction in a post-conviction relief action. However, at the time of the kite, the case had already been denied and was on appeal. Risdal had an attorney at the time of his request. CCUSO refused to take Risdal to the storage unit – which was outside the secure CCUSO unit – and told him to either contact the owner of the storage unit or his attorney for help in accessing his materials. Risdal has not used LexisNexis at CCUSO and has never asked for help to use it.

---

[5] As noted above, Risdal was a plaintiff in a case that previously challenged the mail policy and he, along with the other plaintiffs, agreed to a settlement. *See Taft, et. al., v. Turner et. al.*, C05-4065-DEO, Doc. No. 141 (2012).

# VI.    MOTION FOR SUMMARY JUDGMENT ANALYSIS

Although Risdal's various filings are far from clear, it seems he is making four general allegations.  First, he alleges that defendants are medicating him in violation of the constitution.  Second, he alleges defendants are violating his rights by restricting his mail.  Third, he alleges defendants have destroyed or denied him access to his property.  Fourth, he alleges defendants have denied him access to legal materials.  In their motion for summary judgment, defendants argue that each of those claims fail.  They are correct.

## A.    Involuntary Medication

In relatively confrontational language, Risdal asserts that his rights have been violated because he is involuntarily medicated while at CCUSO.  However, as discussed above, the undisputed facts in this case are that the Iowa state courts have found by clear and convincing evidence that Risdal was seriously mentally impaired and ordered medication under Iowa Code § 229.  As the Eighth Circuit Court of Appeals has stated:

> [p]risoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 222, 110 S. Ct. 1028, 108 L.Ed.2d 178 (1990). . . *Harper's* specific holding is that Due Process allows an inmate to be treated "if [he] is dangerous to himself or others" and (2) when "the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227, 110 S. Ct. 1028.  The *Harper* opinion does not make these criteria the only basis for involuntary medication. See id. at 227, 110 S. Ct. 1028 (holding that the "Due Process Clause permits the State to treat a prison inmate … with antipsychotic drugs against his will" under certain circumstances, while not limiting treatment to those circumstances).  The Supreme Court has explained that an "overriding justification and a determination of medical appropriateness" may justify the forced administration of "antipsychotic drugs on a convicted prisoner." *Riggins v. Nevada*, 504 U.S. 127, 135, 112 S. Ct. 1810, 118 L.Ed.2d 479 (1992) (involuntary medication during trial is permissible where "medically appropriate and, considering less intrusive alternatives, essential for the sake of [a defendant's] own safety or the safety of others" (emphasis added)).

> In *Harper*, the Supreme Court also held that Washington's policy for the involuntary medication of inmates comported with the requirements of Due Process. *Harper*, 494 U.S. at 227, 110 S. Ct. 1028. That policy allowed an inmate to be subjected to involuntary medication "if he (1) suffers from a 'mental disorder' and (2) is 'gravely disabled' or poses a 'likelihood of serious harm' to himself, others, or their property." *Id*. at 215, 110 S. Ct. 1028 (emphasis added).

*Green v. Dormire*, 691 F.3d 917, 922–23 (8th Cir. 2012).

Civil commitment and forced medication in Iowa is governed by Iowa Code chapter 229. *See In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). Iowa Code § 229.6 provides:

> 1. Proceedings for the involuntary hospitalization of an individual pursuant to this chapter . . . may be commenced by any interested person by filing a verified application with the clerk of the district court of the county where the respondent is presently located . . .
>
> 2. The application shall:
>
>    a. State the applicant's belief that the respondent is a person who presents a danger to self or others and lacks judgmental capacity due . . . [a] serious mental impairment as defined in section 229.1.
>
>    b. State facts in support of each belief described in paragraph "a."
>
>    c. Be accompanied by . . . [a] written statement of a licensed physician or mental health professional in support of the application.

Relevant to this case, Iowa law defines "serious mental impairment" as follows:

> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
>
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

12

      b.     Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.

      c.     Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

      d.     Has a history of lack of compliance with treatment and any of the following apply:

           (1)    Lack of compliance has been a significant factor in the need for emergency hospitalization.

           (2)    Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Iowa Code § 229.1(20). These procedures are designed to protect the due process rights of the inmate, and "to protect [the inmate] and others from the danger [the inmate] poses as a result of his mental illness, which requires the administration of medication." *In re I.E.J.*, No. 12-2046, 2013 WL 3458175 at *3 (Iowa Ct. App. July 10, 2013).

In light of the requirements set forth in *Harper*, I find, as I have done in previous cases, that the procedures used in ch. 229 satisfy due process. *See Chapman v. Craig*, 580 Fed. Appx. 501 (8th Cir. 2014) ("The record shows that the [Iowa] state-court proceeding, which occurred before Chapman was involuntarily treated with antipsychotic medication, satisfied the requirements of due process."). Further, there is nothing in the undisputed facts suggesting that Risdal's particular case did not comply with due process requirements. That is, there is no evidence that the defendants failed to follow the procedure set out in Iowa Code ch. 229. An Iowa District Court Judge found that Risdal was seriously mentally impaired and that it was in his best interest to be medicated. Risdal was represented by counsel throughout these proceedings. Accordingly,

defendants are entitled to summary judgment on the involuntary medication issue.[6]

## B.    *Restricted Mail*

Risdal alleges his first amendment rights are frustrated by CCUSO's readable mail policy.  Defendants argue that Risdal's claim is precluded by previous litigation.  I agree.  Risdal was a named plaintiff in *Taft et al.*, v. *Turner et al.*, C05-4065 DEO, Doc. No. 141 (2012).  The settlement in that case resolved concerns about CCUSO's mail policy, stating: "[if] mail is rejected in accordance with CCUSO's policy, the recipient and sender will receive notice of mail rejection.  Either the recipient or the sender may appeal the rejection by completing a grievance. . ."  *Id*.  Risdal's acceptance of the settlement prohibits him from continuing to challenge the constitutionality of the mail policy.

Even without the prior settlement, defendants could still prohibit Risdal from receiving counter-therapeutic mail.  As I have previously stated:

> CCUSO is a secure facility and the CCUSO patients have been committed to the custody of the state.  Accordingly, CCUSO can generally search and secure the facility and examine potentially counter-therapeutic materials.  *See Altman v. Palmer*, No. C13-4066-DEO, 2015 WL 1383824, at *9 (N.D. Iowa 2015) (discussing the confiscation of a counter-therapeutic movie); *see also Taft et al., v. Loescher*, C12-4079, Doc. No. 5 (N.D. Iowa 2012) (dismissing claim where CCUSO patient complained regarding the confiscation of counter-therapeutic mail).

*Hutchcroft v. Palmer*, No. C16-4095-LTS, 2017 WL 1196445, at *4 (N.D. Iowa Mar. 29, 2017).  This is similar to the standard regarding general prison mail.

> The Supreme Court implicitly approved the opening of non-privileged mail to inspect for contraband in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974), decided shortly after *Martinez*. There the

---

[6] Because Risdal's claim is essentially an appeal of the Iowa district court decision, it would also fail under relevant abstention doctrine.  *See Dodson v. Univ. of Ark.*, 601 F.3d 750, 754 (8th Cir. 2010) (under the *Rooker-Feldman* doctrine, "only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack subject-matter jurisdiction over attempted appeals from a state-court judgment.").

Court pointed out "freedom from censorship is not equivalent to freedom from inspection or perusal." *Id*. at 576, 94 S. Ct. at 2984. Non-privileged inmate mail is clearly not immune to inspection, thus such inspections cannot give rise to civil rights violations.

*Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981).

Finally, even if the mail policy amounted to a constitutional violation, it would still be allowed as applied to Risdal under the four factor *Turner* test:

> In *Turner v. Safley*, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Id*., at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id*. In *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012), the 8th Circuit applied the *Turner* framework to civilly committed patients' free speech claims.

*Bennett v. Turner*, No. C15-4197-MWB, 2015 WL 9165926, at *5–6 (N.D. Iowa Dec. 16, 2015). The four *Turner* factors are: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation. *Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (internal citations omitted).

Applying those factors, it is clear the mail policy is allowable. Regarding the first factor, "CCUSO has an interest in the safety of patients and the public as well as an interest in maintaining a therapeutic treatment environment for patients. Safety and a therapeutic treatment environment are legitimate interests. *See Dawson v. Scurr*, 986 F.2d 257 260 (8th Cir. 1993)." *Williams*, 2016 WL 3636035, at *9. Regarding the second factor, patients are free to use the mail and have limited access only if they have previously violated the rules regarding counter therapeutic activity. Even then, they can

access the mail but their mail is inspected. Third, the policy is designed to balance a patient's access to the mail, the staff's ability to regulate contraband and the therapeutic goals of CCUSO. Fourth, Risdal has failed to offer a superior alternative procedure that would balance all the necessary interests. Accordingly, defendants' motion for summary judgment regarding the mail policy is granted.[7]

## C.      *Lost Property*

Risdal's remaining claims relate to property he has allegedly been deprived of accessing. Defendants argue that their motion for summary judgment should be granted because Risdal's claims are barred by the statute of limitations.

Section 1983 claims are governed by the relevant state's personal injury statute of limitations. *Wycoff v. Menke*, 773 F.2d 983, 984 (8th Cir. 1985). In Iowa, this means § 1983 actions will be subject to a two-year statute of limitations. *See* Iowa Code § 614.1(2); *DeVries v. Driesen*, 766 F.3d 922, 924 (8th Cir. 2014). Risdal alleges he lost access to the property at issue between 2007 and 2008. He did not file this action until 2019. Accordingly, defendants are correct that any claim Risdal is attempting to make about a general loss of property is time barred.

Additionally, other than the legal materials, which will be discussed below, Risdal has failed to allege how this situation could amount to a constitutional violation. While the deprivation of property is, in some cases, cognizable pursuant to § 1983, cases pertaining to individual personal property loses are disfavored because, if plaintiffs were allowed a case each time property went missing, "[s]uch reasoning would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems

---

[7] There is some suggestion in Risdal's resistance (Doc. No. 44) and defendants' reply (Doc. No. 46) that Risdal may have intended to base his mail claim in his First Amendment right of free exercise/free association. However, Risdal has failed to develop that argument in any meaningful way in his pleadings. Even liberally construing Risdal's amended complaint (Doc. No. 8) and its supplements, I find nothing about that issue. Accordingly, I find that Risdal has waived it.

may already be administered by the States." *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986) (internal citations omitted). As this court has previously stated:

> A prisoner's due process rights are not violated by the confiscation of property without regard to prison policy regarding notice and opportunity to be heard" so long as there are alternate "post-deprivation" state remedies available. *Brown v. Craven*, 2003 WL 22511356, 3 (N.D. Tex. 2003).

> The State of Iowa recognizes conversion as a legitimate cause of action. *See State v. Hollinrake*, 608 N.W.2d 806, 808 (Iowa App. 2000) ("Conversion is the intentional exercise of control over property which so seriously interferes with the right of another to control it that the actor may justly be required to pay … the full value of the chattel.") (internal quotation omitted).

*Britt v. Smith*, No. 11-CV-04100-DEO, 2012 WL 588741, at *2 (N.D. Iowa Feb. 22, 2012).[8] Because there are other adequate remedies available under state law, an inmate or patient does not necessarily have a cognizable § 1983 claim simply because property is missing. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Moreover, the bulk of the property Risdal claims to have lost is either sexual in nature, related to Mystery Boys, Inc. or both. Risdal cannot make any straight-faced argument that he is entitled to have possession of such property while confined in CCUSO. Rather, nearly every judge that has considered a case arising out of CCUSO over the last decade has stated that CCUSO has the right to deny access to counter-therapeutic material. It should go without saying, but apparently needs to be said, that in light of CCUSO's mandate, material promoting sexual relationships between adults

---

[8] *See Morris v. Strough*, No. 4:10-CV-00482-JAJ, 2012 WL 12977532, at *3 (S.D. Iowa Jan. 3, 2012), *aff'd sub nom. Morris v. Morrison*, 486 F. App'x 615 (8th Cir. 2012), finding, in a similar case, that, "the Iowa Tort Claims Act provides such a remedy for Morris. See Iowa Code § 669."

and children is counter-therapeutic.  As a matter of law, defendants did not violate Risdal's constitutional rights by prohibiting him from receiving or possessing literature or media about sexual relationships between adults and children at CCUSO.

For these reasons, defendants' motion for summary judgment on Risdal's property-based claim is granted.

## D.  *Access to Legal Materials*

Risdal's final claim relates to access to a legal document.  In February 2018, Risdal sent a kite requesting access to his storage unit to retrieve legal materials.  Risdal explained that he was looking for a case citation.  Specifically, he stated: "I was looking for an Iowa Code number that extends the statute of limitations until the fraud, mistake, or trespass is discovered."  At the time of the kite, Risdal had a state post-conviction case on appeal and was represented by counsel.  CCUSO refused to take Risdal to the storage unit – which was outside the secure CCUSO unit – and told him to either contact the owner of the storage unit or his attorney for help in accessing his materials.  Risdal alleges defendants violated his rights when they denied him access to the storage unit.

Of course, Risdal has a constitutionally-protected right to access courts.

The Constitution guarantees prisoners a right to access the courts.  *See Murray v. Giarratano*, 492 U.S. 1, 11 n. 6, 109 S. Ct. 2765, 106 L. Ed.2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of equal protection." (internal citations omitted)); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S. Ct. 2179, 153 L. Ed.2d 413 (2002) (noting, outside of the context of prisons, the right to access the courts is guaranteed by an amalgam of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses).  For prisoners, meaningful access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."

*White v. Kautzky*, 494 F.3d 677, 679–80 (8th Cir. 2007). However, the test to prove a violation of access to the courts is onerous:

> "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir.2007) (citations omitted). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 353, 116 S. Ct. 2174, 135 L. Ed.2d 606 (1996)).

*Hartsfield v. Nichols*, 511 F.3d 826, 831–32 (8th Cir. 2008). Actual injuries resulting from the denial of access to the courts include, for example, a court dismissing a prisoner's claim due to the lack of access to legal materials, or an inmate being unable to file a claim for an actionable harm due to the lack of access to legal materials. *Id.* at 351; *see also Root v. Towers*, 238 F.3d 423 (6th Cir. 2000) (unpublished) ("[n]o actual injury occurs without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented."); *Nitz v. Hall*, No. 11-1143, 2011 WL 13193297, at *3 (C.D. Ill. June 16, 2011), *aff'd*, 473 F. App'x 513 (7th Cir. 2012) (citations omitted) ("when a plaintiff alleges a denial of the right to access the courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filing, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources."). Conclusory statements that a prisoner was unable to properly prepare a legal document, standing alone, are insufficient to support a claim for denial of access to the courts. *See Pearson v. Saar*, No. PJM-03-869, 2004 WL 1391160, at *4 (D. Md. Jan. 21, 2004), *aff'd*, 96 F. App'x 156 (4th Cir. 2004).

The constitutional rights to legal papers and to be free from interference with legal mail are closely related to the access to courts. *See Goff v. Nix*, 113 F.3d 887, 892 (8th

Cir. 1997), stating that, "[t]he taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts." Additionally, "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981). That is because:

> *Wolff v. McDonnell*, 418 U.S. 539, 575–77, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974). . . [stands] for the proposition that mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence. . . *See also Powells v. Minnehaha County Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir. 1999) (allegation that prison officials opened legal mail outside of inmate's presence is sufficient to state a constitutional claim); *Thongvanh v. Thalacker*, 17 F.3d 256, 258–59 (8th Cir. 1994) (prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail).

*Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001). Additionally,

> [t]he taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts. We will not deny relief on the unsupported assumption that the papers involve only frivolous claims. Therefore, the destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest.

*Goff*, 113 F.3d at 892.

In this case, Risdal has not created a material issue of fact that he was injured by the lack of access to the courts. In 2018, Risdal requested access to his outside storage locker to look for a case citation. At the time, Risdal was working on the appeal of his post-conviction relief case and was looking for an Iowa Code citation related to tolling the statue of limitations for post-conviction cases. However, Risdal was both represented by counsel during the post-conviction case and had access to an electronic legal research portal at CCUSO. Access to counsel alone defeats his claim. *See Quam v. Minnehaha*

*County Jail*, 821 F.2d 522, 523 (8th Cir.1987) (per curiam) (§ 1983 plaintiff was afforded meaningful access to courts because he had regular access to his court-appointed attorney during the relevant time). Moreover, defendants encouraged Risdal to contact his attorney with his question. Additionally, the issue he sought to raise on his appeal was considered by the Iowa Court of Appeals in ruling on his post-conviction appeal:

> Risdal's application was properly denied because he filed his application beyond the three-year statute of limitations for PCR claims and *the exception to the statute of limitations does not apply*. We therefore affirm the district court's denial of Risdal's PCR application.

*Risdal v. State*, 2019 WL 478234 at *2 (Iowa Ct. App. 2019) (emphasis added). Thus, Risdal had access to the court through his attorney and the issue he sought to research made its way into his case. Because Risdal's access to the courts claim fails as a matter of law, defendants' motion for summary judgment on that claim is granted.

### E.     Other Issues

Because I have found in favor of defendants on each of the proceeding issues, I need not consider defendants' arguments regarding qualified and sovereign immunity.

### VII.     CONCLUSION

For the reasons set forth herein:

1. Plaintiff's motion for an injunction (Doc. No. 51) is **denied**.

2. Plaintiff's motion for sanctions (Doc. No. 55) is **denied**.

3. Defendants' motion to strike (Doc. No. 60) is **granted**. Plaintiff's motion for summary judgment (Doc. No. 57) is **stricken**.

4. Defendants' motion for summary judgment (Doc. No. 40) is **granted in its entirety**. All claims asserted by plaintiff are **dismissed** and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2020.

_____
Leonard T. Strand, Chief Judge